IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| American Builders Insurance Company f/k/a Association Insurance Company, | ) ) ) | Civil Action No. 2:20-cv-01694-DCN |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **DECLARATORY JUDGMENT ACTION** |
| Archer Development Group, LLC a/k/a Archer Construction a/k/a Archer Construction, LLC, C. Hampton Atkins, Mark A. Barford, Michelle T. Barford, Holly Blanchard, Darci Buchanan, Karl Buchanan, Leo Brueggeman, Beverly Carroll, Thomas Cordeiro, Gayle C. Foster, Robert S. Foster, Sr., Jan R. Gunn, Kirk A. Gunn, Matthew Horton, Connie Michels, John Michels, Karen Miller, Ellen Parker, Matthew V. Roughgarden, Nancy T. Roughgarden, Lydia Schafer, Patrick Schafer, Annette P. Sherman, Enoch G. Sherman, Beth Stenger, Walter Stenger, Chris Taylor, Jane Taylor, Tara White, William White, Leah Wilkins, Tal Wilkins, Catherine T. Young, Thomas E. Young, Jr., Individually, On Behalf Of All Others Similarly Situated, and On Behalf Of The Preserve At The Clam Farm Homeowners Association, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) | |

The Plaintiff, American Builders Insurance Company f/k/a Association Insurance Company ("AIC"), by and through its undersigned counsel, hereby states the following as its complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

1. Pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP, AIC seeks a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties under certain policies of insurance with respect to claims of damages which have arisen as a result of a construction project known as The Preserve at the Clam Farm ("Clam Farm") which is the subject of a matter pending in the Court of Common Pleas, County of Charleston, State of South Carolina, Ninth Judicial Circuit titled *C. Hampton Atkins, et al. v. Clam Farm Partnership, LLC, et al.*, 2019-CP-10-5277, which is a purported class action involving construction defects allegations (the "Underlying Lawsuit"). A copy of the complaint filed in the Underlying Lawsuit is attached as Exhibit A.

## JURISDICTION

2. Jurisdiction over the claims, subject matter and parties contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

## VENUE

3. This action properly lies in the United States District Court for the District of South Carolina, Charleston Division, pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the work performed on the Clam Farm project lies in this judicial district; the underlying action is pending in this judicial district; the parties are subject to personal jurisdiction in the state of South Carolina; and a substantial part of the events giving rise to this declaratory judgement action occurred in this judicial district. Thus, venue is proper in this judicial district.

**PARTIES**

4. This matter is a declaratory judgement action, pursuant to 28 U.S.C. §2201 et. seq. and Rule 57, FRCP, seeking a declaration by this Honorable Court as to the rights and obligations of the parties herein pursuant to policies of insurance sold by AIC to Archer Development Group, LLC a/k/a Archer Construction a/k/a Archer Construction, LLC ("Archer").

5. AIC is an insurance company organized and existing under the laws of the state of Delaware, is licensed to sell policies of insurance in the state of South Carolina, and maintains its principal place of business in Georgia.

6. Upon information and belief, Archer is an entity organized and existing pursuant to the laws of the state of South Carolina with its principal place of business in Charleston, South Carolina and at all times relevant to this action was conducting business at the Clam Farm project.

7. Nothing contained herein is to be construed as in support of the allegations against Archer in the Underlying Lawsuit.

8. Upon information and belief, C. Hampton Atkins, Mark A. Barford, Michelle T. Barford. Holly Blanchard, Darci Buchanan, Karl Buchanan, Leo Brueggeman, Beverly Carroll, Thomas Cordeiro, Gayle C. Foster, Robert S. Foster, Sr., Jan R. Gunn, Kirk A. Gunn, Matthew Horton, Connie Michels, John Michels, Karen Miller, Ellen Parker, Matthew V. Roughgarden, Nancy T. Roughgarden, Lydia Schafer, Patrick Schafer, Annette P. Sherman, Enoch G. Sherman, Beth Stenger, Walter Stenger, Chris Taylor, Jane Taylor, Tara White, William White, Leah Wilkins, Tal Wilkins, Catherine T. Young, and Thomas E. Young, Jr. are residents of Charleston County, South Carolina, and are owners of the condominiums at the Clam Farm project. (*See* Exhibit A, at ¶ 1.) All of these individuals are the named plaintiffs in the Underlying Lawsuit who

are purportedly representatives of additional putative class members (the "Purported Class Representatives").

9. The interests of any additional putative class members are being protected by the named Purported Class Representatives because they are the only active participants in the Underlying Lawsuit and have represented to the underlying state court that they are adequate and committed representatives of the purported class. (*See* Exhibit A, at ¶¶ 37, 38, 44.)

## FACTUAL ALLEGATIONS

10. AIC issued Commercial General Liability Policy number GLP 0152752 00 to Archer covering the policy period of July 11, 2013 to July 11, 2014 (the "First Policy"). A copy of the First Policy is attached as Exhibit B and is incorporated herein by reference.

11. AIC issued Commercial General Liability Policy number GLP 0152752 01 to Archer effective from July 11, 2014 until Archer cancelled this policy effective October 31, 2014 (the "Second Policy"). A copy of the Second Policy is attached as Exhibit C and is incorporated herein by reference.

12. Archer is alleged to have served as the general contractor for Phase III of the construction at the Clam Farm project.

13. The Purported Class Representatives have brought the Underlying Lawsuit against Archer, as well as against other entities and persons involved in the design, development, construction, and management of the Clam Farm project, alleging various causes of action and seeking damages.

14. The Purported Class Representatives in the Underlying Lawsuit allege the following causes of action against Archer: negligence, gross negligence, and breach of warranty of workmanlike service.

15. By letter dated December 23, 2019, counsel for Archer provided notice of the Underlying Lawsuit to AIC under the First Policy and the Second Policy.

16. On January 23, 2020, AIC agreed to provide Archer a defense to the Underlying Lawsuit under the First Policy and the Second Policy, pursuant to a reservation of rights. The reservation of rights letter is attached as Exhibit D.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Duty of Defense as to Archer)**

17. Both the First Policy and the Second Policy contain a Condominium Exclusion which provides that coverage is excluded for property damage "arising out of [Archer's] work in the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction or replacement of any part of a 'condominium project' and/or a 'community apartment project/co-operative project.'"

18. The Condominium Exclusion defines a "condominium project" as "a development consisting of condominiums," and provides that a "condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit."

19. The Condominium Exclusion further defines a "community apartment project/co-operative project" as "a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located therein."

20. The Clam Farm project is a "condominium project" and/or a "community apartment project."

21. The complaint in the Underlying Lawsuit provides that the Purported Class Representatives are members of The Preserve at the Clam Farm Homeowners Association, Inc., formerly titled The Preserve at the Clam Farm Condominium Association, Inc. (*See* Exhibit A, at ¶¶ 1-2.)

22. The master deed and other exhibit materials attached to the complaint in the Underlying Lawsuit also refer to the Clam Farm project as "condominiums" and further refer to it consisting of "apartment," "apartment unit," and "unit." (*See* Exhibit A.)

23. AIC would show that any property damage found against Archer arose out of Archer's work on the Clam Farm project, which is a "condominium project" or a "community apartment project," and any such property damage is excluded pursuant to the First Policy's and the Second Policy's Condominium Exclusion.

24. Because the Claim Farm is a condominium project, there is no possibility of coverage under the First Policy or the Second Policy for damages that could be recovered against Archer in the Underlying Lawsuit.

25. In addition to the Condominium Exclusion, other policy exclusions foreclose coverage under the First and Second Policy for any property damage sought in the Underlying Lawsuit, including, but not limited to, Exclusion j(5) and Exclusion j(6).

26. AIC, therefore, requests a declaration from this Honorable Court that the First Policy and the Second Policy do not require AIC to defend Archer with respect to the claims against Archer in the Underlying Lawsuit.

## SECOND CAUSE OF ACTION
**(Declaratory Judgment – Duty of Indemnity as to Archer)**

27. In the alternative, if this Honorable Court finds the Underlying Lawsuit triggers AIC's duty of defense with respect to Archer, AIC seeks a declaration in relation to whether or not the claims against Archer in the Underlying Lawsuit trigger the duty of indemnity and to what extent, if any, the duty of indemnity is triggered.

28. AIC would show that Archer carries the burden of proving, with specificity and particularity, all damages, if any, that fall within the First Policy and the Second Policy.

29. AIC would show that should a judgment be entered against Archer in the Underlying Lawsuit, the judgment holder, i.e., the Purported Class Representatives in the Underlying Lawsuit, carries the burden of proving, with specificity and particularity, all damages that fall within the First Policy and the Second Policy.

30. AIC would show that damages must be analyzed to determine which damages result from an occurrence pursuant to the First Policy and the Second Policy.

31. AIC would show that damages must be analyzed to determine what portion of damages meet the definition of property damage pursuant to the First Policy and the Second Policy.

32. AIC would show that repair costs associated with a finding of defective work, if any, do not meet the definition of property damage pursuant to the First Policy and the Second Policy, are excluded pursuant to the First Policy's Residential Faulty, Defective or Poor Workmanship Exclusion and by the Second Policy's Resulting Damage Coverage endorsement, and do not trigger the duty of indemnity.

33. AIC would show that any damages found against Archer must be allocated into categories of (1) improper work, and (2) resulting damages. Only resulting damages potentially can qualify as property damage under the First Policy and the Second Policy.

34. AIC would show that any other damages and costs claimed in the Underlying Lawsuit that do not meet the definition of property damage and are not caused by an occurrence, are not covered under the First Policy, and the Second Policy and do not trigger the duty of indemnity.

35. AIC would show that any damages qualifying as property damage must be applied to all policy exclusions to determine if excluded under the First Policy and the Second Policy.

36. AIC would show that any property damage found against Archer that occurred during Archer's work on the Clam Farm project, which work was not completed by the end of the policy period applicable to the First Policy and the Second Policy, is excluded pursuant to the First Policy's and the Second Policy's Exclusion j(5) and Exclusion j(6).

37. AIC would show that any property damage found against Archer that arose out of Archer's work on any structure that exceeds three stories is excluded pursuant to the First Policy's and the Second Policy's Exclusion–Designated Work.

38. AIC would show that any property damage found against Archer that relates to the recall of products, work or impaired property is excluded pursuant to the First Policy's and the Second Policy's Exclusion n.

39. AIC would show that the First Policy and the Second Policy provide only limited fungi/mold coverage, with a $2,500 limit and a $2,000 deductible, for any property damage found against Archer that would not have occurred, but for the threatened existence of fungi.

40. AIC would show that any property damage found against Archer that relates to any professional services by Archer is excluded under the First Policy's and the Second Policy's Exclusion–Designated Professional Services, Exclusion–Construction Management Errors and Omissions, Exclusion–Engineers, Architects or Surveyors Professional Liability, and Exclusion–Contractors–Professional Liability.

41. AIC would show that any property damage found against Archer that is expected or intended from the standpoint of the insured is excluded under the First Policy and the Second Policy.

42. AIC would show that any property damage found against Archer that is found to fall under any other applicable policy exclusions or limiting endorsements under the First Policy and the Second Policy is excluded and/or limited.

43. AIC, therefore, requests a declaration from this Honorable Court that the First Policy and the Second Policy do not require AIC to indemnify Archer with respect to the claims against Archer in the Underlying Lawsuit.

44. Should any damages found against Archer be adjudicated as meeting the definition of property damage, as caused by an occurrence, and as not otherwise excluded or limited by an exclusion or endorsement under the First Policy and the Second Policy, AIC seeks a declaration of the dollar amount of such damages.

45. AIC would show that any damages meeting the definition of property damage and not otherwise excluded and/or limited by any applicable policy exclusions or limiting endorsements under the First Policy and the Second Policy must be applied to a time-on-risk analysis to determine which of those damages fall within the policy period.

46. AIC would show that any damages occurring outside of the policy period do not trigger the duty of indemnity.

WHEREFORE, having fully set forth its claims, AIC prays unto this Honorable Court as follows:

    a. For a declaration of the rights and obligations of the parties herein;

    b. For a declaration that AIC owes no duty of defense;

    c. For a declaration that AIC owes no duty of indemnity;

    d. For a declaration that determines which damages, if any, trigger the duty of indemnity under the AIC policies;

e.  For the court to determine the dollar amount of damages, if any, due under the relevant AIC insurance policies after conducting an analysis of the damages that determines which damages, if any, from the Underlying Lawsuit meet the requirements of the insuring agreement, are not excluded or limited by exclusions or endorsements, are not the work of the insured, and that are property damage from an occurrence during the policy subject to a time-on-risk analysis; and

f.  For any and all other relief this Honorable Court deems just and proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ OLESYA V. BRACEY
    Robert W. Whelan
    Federal Bar No. 9242
    E-Mail: robert.whelan@nelsonmullins.com
    Olesya V. Bracey
    Federal Bar No. 11767
    E-Mail: olesya.bracey@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

*Attorneys for American Builders Insurance Company f/k/a Association Insurance Company*

April 30, 2020